UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YI HUANG,<br><br>        Plaintiff,<br><br>        v.<br><br>WASHINGTON MUTUAL BANK, *et al.*,<br><br>        Defendants. | CASE NO. C07-0736RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS |

## **I. INTRODUCTION**

This matter comes before the Court on "Defendants' Motion to Compel Arbitration and Stay Proceedings" (Dkt. #8). Defendants argue that the Court should compel arbitration and stay the instant case pursuant to a binding arbitration agreement entered into by the parties. Plaintiff responds that the arbitration agreement at issue is both procedurally and substantively unconscionable and therefore should not be enforced.

For the reasons set forth below, the Court agrees with Defendants, and GRANTS "Defendants' Motion to Compel Arbitration and Stay Proceedings."

## **II. DISCUSSION**

### **A. Background**

Plaintiff Yi Huang ("Mr. Huang") is a Chinese national who is currently in the United States on an H-1B visa. In early 2005, Mr. Huang accepted a position of employment as a risk manager at Defendants Washington Mutual Bank and Washington Mutual, Inc. (collectively "Washington Mutual"). Approximately one month prior to his starting date, Mr. Huang completed and signed an "Application for Employment" with Washington Mutual on February 8,

MEMORANDUM ORDER
PAGE - 1

2005. The document provided in pertinent part:

> If I accept an offer of employment with Washington Mutual, *I agree to abide by its policies and procedures and to resolve all disputes relating to my employment through Washington Mutual's Dispute Resolution Process, which includes binding arbitration.* As a condition of accepting any offer of employment, I will sign a *Binding Arbitration Agreement*. Upon Request, Washington Mutual will provide me with a copy of the policy and the Agreement before I sign this application or the Agreement.

(Dkt. #20, Decl. of Bolasina, Ex. A at 7) (emphasis added).

On February 15, 2005, Washington Mutual sent an offer of employment to Mr. Huang, which included the binding arbitration agreement mentioned in Mr. Huang's application. Mr. Huang signed and accepted the offer, which specifically indicated that Mr. Huang understood that his offer was conditioned upon his completion of the binding arbitration agreement. (*Id.*, Ex. D at 15). Mr. Huang also signed and dated the binding arbitration agreement that same day. The agreement, which is clearly titled, "Binding Arbitration Agreement," began by indicating that:

> Washington Mutual believes that, if a dispute related to your employment here arises, it is preferable for both you and the Company that it be solved without resorting to litigation. As part of the Internal Dispute Resolution Program, which is available to all employees, *the Company and its employees mutually agree that any disputes that cannot be resolved internally will go to binding arbitration*, because it is a quicker and less disruptive process than litigation.

(*Id.*, Ex. B at 9) (emphasis added).

The agreement further detailed the types of disputes that were subject to binding arbitration. While exhaustive, the Court finds it worthwhile to reiterate the following provisions that are contained in the agreement:

> 1. Any and all disputes that involve or relate in any way to my employment (or termination of my employment) with Washington Mutual *shall be submitted to and resolved by final and binding arbitration.*
>
> 2. Washington Mutual and I understand that by entering into this Agreement, each of us is waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and waiving any right we may have to resolve employment disputes through trial by jury. *We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.*
>
> 3. This Agreement *is intended to cover all civil claims that involve or relate in any way to my employment* (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of *race*, sex, age, religion, color, *national origin*, sexual orientation, disability and veteran status (including, but not limited to, claims under *Title VII*

MEMORANDUM ORDER
PAGE - 2

*of the Civil Rights Act of 1964*, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Immigration Reform and Control Act, and *any other local, state or federal law concerning employment or employment discrimination*), claims for breach of any contract or covenant, tort claims, *claims based on violation of public policy or statute*, and claims against individuals or entitled employed by, acting on behalf of, or affiliated with Washington Mutual. The only exceptions to this are

- Claims for benefits under a plan that is governed by ERISA,
- Claims for unemployment and workers compensatory benefits,
- Claims for injunctive relief to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees.

(*Id.*) (emphasis added).

Originally, Mr. Huang was to commence his employment with Washington Mutual on March 14, 2005. However, Mr. Huang's H1-B visa sponsorship had to be transferred from his previous employer to Washington Mutual, thereby delaying his start date. (Dkt. #22, Decl. of Huang, Ex. C). Washington Mutual subsequently provided Mr. Huang with a revised offer, modifying his start date to March 21, 2005. Washington Mutual also sent Mr. Huang a binding arbitration agreement that was identical to the one he signed on February 15, 2005. Mr. Huang once again executed the agreement on March 21, 2005.

After seven-plus months at Washington Mutual, Mr. Huang alleges that he was forced to quit on November 2, 2005. (Pl.'s Am. Compl. ¶ 4.28). In sum, Mr. Huang alleges that he was singled out at Washington Mutual on the basis of his race, national origin, and for reporting illegal or wrongful conduct. (*Id.* at ¶ 1.2). Therefore Mr. Huang contends that he was subject to unfavorable employment actions, harassment, defamation and constructive discharge. (*Id.* at ¶ 1.3).

As a result, Mr. Huang brought this lawsuit as a *pro se* plaintiff against Washington Mutual on May 11, 2007. Mr. Huang eventually obtained counsel, and subsequently filed an amended complaint on September 5, 2007. In his amended complaint, Mr. Huang alleges employment discrimination, whistleblower retaliation, wrongful discharge in violation of public policy, defamation, negligence, and assault and battery. (Dkt. #3, Pl.'s Compl., ¶¶ 5.1-11.2). Notably, the Court issued a temporary stay in this matter on September 18, 2007, pursuant to a stipulation entered into by the parties indicating that the parties were attempting to resolve this matter through early mediation. (Dkt. #7). The mediation was unsuccessful, and the stay was

MEMORANDUM ORDER
PAGE - 3

lifted on December 1, 2007. Mr. Huang's attorney then moved to withdraw as counsel, and the Court granted this motion on January 30, 2008. (Dkt. #14). Mr. Huang obtained new counsel, and his new attorney appeared in this Court on March 3, 2008. (Dkt. #16). Defendants now bring the instant motion to compel arbitration.

### B. Federal Law Governing Arbitrability

The Federal Arbitration Act ("FAA") governs all employment contracts except those covering workers engaged in transportation. *E.E.O.C. v. Waffle House, Inc.*, 524 U.S. 279, 289 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)). "The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration[.]" *Id.* (citing 9 U.S.C. §§ 3 and 4). Whether a proceeding is subject to arbitration is determined by examining the language of the agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

Furthermore, the "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered . . . [and to] rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (finding that the primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms"). The Supreme Court has established that the FAA manifests a liberal federal policy favoring arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The party opposing arbitration bears the burden of showing that an agreement to arbitrate is not enforceable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

Based on this case law and the binding arbitration agreement at issue in this case, Washington Mutual argues that there is no question that the Court should compel arbitration. The Court agrees. The language of the binding arbitration agreement could not be any clearer. As laid out above, Mr. Huang unequivocally signed two separate agreements in which he agreed that any claims or disputes arising out of his employment with Washington Mutual would be subject to arbitration. Mr. Huang also signed two separate documents acknowledging the fact

MEMORANDUM ORDER
PAGE - 4

that he was aware that his employment with Washington Mutual was conditioned upon his acceptance of the binding arbitration agreement. Indeed, Mr. Huang does not dispute that he signed these documents. Nor does Mr. Huang dispute the fact that the nature of his claims against Washington Mutual are covered by the agreement. Therefore the Court finds that the agreement at issue clearly calls for arbitration.

### C. Unconscionability

Nevertheless, Mr. Huang argues that the binding arbitration agreement is unenforceable because it is unconscionable. The existence of an unconscionable bargain is a question of law for the courts. *Mendez v. Palm Harbor Homes, Inc.*, 111 Wash. App. 446, 458, 45 P.3d 594 (2002) (citations omitted). Washington contract law follows the general principle that two categories of unconscionability exist, procedural and substantive. *Id.* at 459.[1] Procedural unconscionability relates to impropriety arising out of contract formation. *Walters v. A.A.A. Waterproofing, Inc.*, 120 Wash. App. 354, 361, 85 P.3d 389 (2004) (citations omitted). This type of unconscionability generally occurs when one party lacks a "meaningful choice" in the bargaining process. *Adler v. Fred Lind Manor*, 153 Wash. 2d 331, 347, 103 P.2d 773 (2004). Courts look to circumstances surrounding the formation of the contract, including the manner in which the contract was entered, whether the parties had a reasonable opportunity to comprehend and understand the terms, and whether any material terms were hidden or inconspicious. *Id.* (citations omitted).

Meanwhile, substantive unconscionability exists when a clause or term in the contract is one-sided, overly harsh, or includes a gross disparity. *Adler*, 153 Wash. 2d at 344. "'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.* (quoting *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131, 896 P.2d 1258 (1995)). In either case, the burden of proving that a contract or a contract

---

[1] Importantly, neither party disputes the applicability of Washington contract law on unconscionability to the binding arbitration agreement at-issue. Case law is clear in establishing that courts should look to state law to determine whether an arbitration agreement is unconscionable. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).

clause is unconscionable lies upon the party attacking the contract. *See Yakima Co. Fire Protection Dist. No. 12 v. City of Yakima*, 122 Wash. 2d 371, 391, 858 P.2d 245 (1993).

### 1. Procedural Unconscionability

Here, Mr. Huang specifically claims that the agreement is procedurally unconscionable because he lacked any meaningful choice in signing the agreement. He claims that he simply signed the arbitration agreement under the belief that it was a standard contract. Mr. Huang also claims that he did not know the purpose of the agreement, and that no one at Washington Mutual explained its terms to him. However, the Court finds there was no impropriety surrounding the formation of this contract. Washington Mutual made it abundantly clear on two separate occasions prior to the commencement of Mr. Huang's employment that his offer was conditioned upon agreeing to the binding arbitration agreement. Washington Mutual also unequivocally provided Mr. Huang with not one, but two copies of the very clearly titled "Binding Arbitration Agreement."

Additionally, Mr. Huang had adequate time to review the agreement, as Washington Mutual sent him the agreement one month prior to his start date. *See Zuver v. Airtouch Communications, Inc.*, 153 Wash. 2d 293, 306, 103 P.3d 753 (2004) (finding that 15 days was sufficient to review a binding arbitration agreement); *see also Luna v. Household Finance Corp. III*, 236 F. Supp. 2d 1166, 1176 (W.D. Wash. 2002) (noting that a three-day rescission period provided parties with a reasonable opportunity to consider the terms of the agreement). During this period, Mr. Huang had ample opportunity to review the terms of the binding arbitration agreement, contact Washington Mutual to understand the terms of this agreement, and obtain counsel if he desired to further understand the agreement. This substantial time period undermines Mr. Huang's arguments that he would have never executed the agreement had he understood its legal ramifications.

Mr. Huang also argues that he somehow lacked a meaningful choice because he is a Chinese national with limited English skills. He claims that he is "not very fluent with the English language" and that he was "not hired for [his] English, rather for [his] mathematics, statistics, and business background." (Decl. of Huang, ¶ 14). However, limited fluency in English does

not excuse a party from his affirmative obligation to understand a contract before signing it. *See Sofio v. Hughes*, 162 A.D.2d 518, 520-21, 556 N.Y.S.2d 717 (N.Y.Ct. App. 1990). Mr. Huang had the responsibility to make a reasonable effort to understand the terms of the binding arbitration agreement. In any event, as Washington Mutual indicates, Mr. Huang appears to have sufficient command of the English language. As noted above, he initiated this lawsuit as a *pro se* plaintiff. The complaint drafted and filed by Mr. Huang clearly indicates to the Court that Mr. Huang is more than capable of understanding English. Mr. Huang has also obtained a graduate degree from the University of Illinois and has been working in the United States since 2001. Indeed, Mr. Huang asserts in his amended complaint that he "has no trouble communicating in English." (Pl.'s Am. Compl., ¶ 4.14).

The Court also finds that the terms of the agreement at-issue were neither inconspicious nor hidden in a "maze of fine print." *See Zuver*, 153 Wash. 2d at 306. This agreement was clearly entitled "Binding Arbitration Agreement" and was provided to Mr. Huang as a separate document in addition to his offer of employment. The terms are expressly laid out within the document, and the agreement is clear in its purpose and scope. The Court also notes that the document itself is only two pages long.

Ultimately, Mr. Huang must show that Washington Mutual refused to respond to his questions or concerns, placed undue pressure on Mr. Huang, or that the terms were set forth in a way that a reasonable person could not understand them. *Nelson v. McGoldrick*, 127 Wash. 2d 124, 135-36, 896 P.2d 1258 (1995). Mr. Huang submits no such objective evidence, and his subjective beliefs suggesting that Washington Mutual left him no meaningful choice because of its superior bargaining position is not a sufficient reason to overcome the clear language of the agreement to arbitrate. Simply arguing that one party is in a superior bargaining position than the other does not establish procedural unconscionability. *See Zuver*, 153 Wash. 2d at 307 ("[I]f a court found procedural unconscionability based solely on an employee's unequal bargaining power, that holding 'could potentially apply to [invalidate] every contract of employment in our contemporary economy.'") (quoting *Adkins v. Labor Ready, Inc.*, 303 F.2d 496, 501 (4th Cir. 2002)). Thus, the Court finds that the binding arbitration agreement is not procedurally

unconscionable.

### 2. Substantive Unconscionability

Mr. Huang also argues that the agreement is substantively unconscionable because it contains an attorneys fee provision that requires both parties to bear their own costs. Mr. Huang claims that such a clause is unenforceable when the employer is in a substantially stronger bargaining position than the employee. Mr. Huang cites to *Alder*, *supra*, to support his position. However, Mr. Huang overstates the rule of law in *Alder* and mischaracterizes the applicable provision in the binding arbitration agreement at-issue in this case.

In *Alder*, the plaintiff alleged that a provision in the arbitration agreement that provided that "[t]he parties shall bear their own respective costs and attorneys fees" was substantively unconscionable. *Alder*, 153 Wash. 2d at 354. The Washington Supreme Court agreed, finding specifically that this provision required the plaintiff to waive his right to recover attorneys fees under RCW 49.60.030(2). *Id.* The Court placed particular emphasis on the word "shall" in the attorneys fees clause. *Id.* The Court interpreted that "shall" required each side to bear its own costs and therefore restricted the plaintiff's ability to recover attorneys fees. This emphasis on the directive "shall" is affirmed by another Washington Supreme Court case which found that an attorneys fees provision that did not include the operative word "shall" was not substantively unconscionable. *See Zuver*, 153 Wash.2d at 312.

In contrast, the provision on attorneys fees in this case simply states that "[e]ach party, at its own expense, has the right to hire an attorney to represent it in the arbitration." (Decl. of Bolasina, Ex. B at 10). This is clearly distinguishable from the provision in *Alder* because the operative word "shall" is noticeably absent from the instant agreement. As a result, nothing in the language of this arbitration agreement precludes either party from recovering attorneys fees under RCW 49.60.030(2). *See Sammy Enterprises v. O.P.E.N. America, Inc.*, 2008 WL 2010357, at *8 (Wash.App. Div. 1, May 12, 2008) (finding that "Washington cases addressing the issue [of substantive unconscionability with respect to attorneys fees] found provisions that did *not* guarantee that the prevailing party could later recover its costs and fees to be potentially problematic.") (emphasis in original). As Washington Mutual points out, this agreement does

MEMORANDUM ORDER
PAGE - 8

not divest either party of their rights to fee shifting pursuant to RCW 49.60.030(2) in the event that they prevail in this action. It simply provides each side with the right to obtain counsel for arbitration at its own expense. Mr. Huang also does not expressly argue that the agreement at-issue precludes his ability to recover attorneys fees, only indirectly arguing that Washington Mutual's arguments to the contrary should be rejected. (*See* Dkt. #21 at 7). Ultimately, this provision simply is not 'shocking to the conscience', 'monstrously harsh', and/or 'exceedingly calloused' as contemplated by cases which establish substantive unconscionability. *See Nelson*, 127 Wash. 2d at 131. Therefore the Court does not find that the provision at-issue is substantively unconscionable.

It is worth emphasizing that Mr. Huang will have his employment discrimination claims heard. This Court, however, is not the proper forum pursuant to the clear and unequivocal language of the binding arbitration agreement that the parties entered into in this case. *See Mitsubishi Motors Corp. v. Soler Chysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). Consequently, the Court shall give effect to the binding arbitration agreement, and shall grant Washington Mutual's motion to compel and stay the instant proceedings.

### III.  CONCLUSION

Having reviewed the relevant documents, the Court hereby finds and orders:

(1) "Defendants' Motion to Compel Arbitration and Stay Proceedings" (Dkt. #8) is GRANTED. The instant case shall be stayed. The parties are advised <u>to submit a Joint Status Report within six (6) months from the date of this Order</u> informing the Court of the status of their arbitration.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this <u>25</u> day of August, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE